UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM T. ESREY and
RONALD T. LEMAY,

                                    Plaintiffs,                    16-CV-3019 (JPO)

                    -v-                                            OPINION AND ORDER

THE UNITED STATES OF AMERICA,

                                    Defendant.

J. PAUL OETKEN, District Judge:

Plaintiffs William T. Esrey and Ronald T. LeMay initiated this action on April 22, 2016,

against the United States of America (the "Government"), alleging wrongdoing by the Internal

Revenue Service ("IRS"), under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80,

for aiding and abetting a breach of fiduciary duty.  (*See* Dkt. No. 1 ("Compl.").)  The

Government moves to dismiss the Complaint for lack of subject matter jurisdiction pursuant to

Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief may

be granted under Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 18.)  For the reasons that

follow, the Government's motion is granted pursuant to Rule 12(b)(1).

I.      **Background**

The following facts are taken from the Complaint and are presumed true for the purposes

of this motion.

Plaintiffs are former executives of Sprint Corporation ("Sprint").  (Compl. ¶ 2.)  Esrey

served as Sprint's Chief Executive Officer from 1985 through 2003, and Sprint's Chairman from

1990 to 2003.  (*Id.* ¶ 12.)  LeMay served as Sprint's Chief Operating Officer from 1996 to 2003,

except for a brief stint as Chairman and Chief Executive Officer of another company.  (*Id.* ¶ 13.)

As of 2002, Ernst & Young (EY), a global accounting firm, had been tax advisor and financial planner for Esrey for over two decades and for LeMay for over a decade. (*Id.* ¶ 14-15.) EY was also Sprint's certified public accountant while Plaintiffs were employed by Sprint. (*Id.* ¶ 17.)

On EY's advice, Plaintiffs engaged in two transactions relevant to the present dispute: a Contingent Deferred Swap ("CDS") transaction in 1999 and 2000 and a CDS Add-On transaction in 2000 and 2001. (*Id.* ¶ 18.) On February 26, 2001, knowing that Plaintiffs had entered into these transactions, the Sprint Board authorized new employment agreements with Plaintiffs. (*Id.* ¶ 58.)

In March 2002, the IRS initiated an audit of EY's promotion of certain tax shelters (the "Promoter Audit"). (*Id.* ¶ 19.) That same year, the IRS also began to audit taxpayers who had actually participated in those tax shelters (the "Investor Audits"). (*Id.* ¶ 21.) EY represented Plaintiffs before the IRS in connection with the Investor Audits. (*Id.* ¶¶ 22-23.) In June 2003, the IRS agents involved in the Promoter Audit informed EY that the IRS Criminal Investigation Division ("CID") was investigating the conduct of certain EY employees, and that the Promoter Audit team was sharing its documents with CID. (*Id.* ¶¶ 32, 44.) On June 21, 2002, the United States Attorney's Office for the Southern District of New York ("SDNY") informed EY that it was initiating an investigation into EY's conduct in promoting the tax shelters. (*Id.* ¶ 24.)[1] These investigations by the IRS, CID, and SDNY created a conflict of interest between EY and the Plaintiffs. (*Id.* ¶ 3.)

_____

[1] By May 2004, SDNY initiated a federal grand jury investigation into EY's sales of tax shelters. (*Id.* ¶ 37.) In May 2007, the grand jury indicted four EY employees for participating in a scheme to defraud the IRS by means of fraudulent tax shelters (*id.* ¶ 39), which led to their conviction on multiple charges, including tax evasion in connection with the tax shelters (*id.* ¶ 40). *See United States v. Coplan*, No. 07 Crim.453 (S.D.N.Y. May 7, 2009). The Second Circuit reversed two of the convictions and upheld the other two. (Dkt. No. 1 ¶ 40.) *See United States v. Coplan*, 703 F.3d 46 (2d Cir. 2012).

The Sprint Board became concerned about the conflict of interest between Plaintiffs and EY due to the audits of Plaintiffs, and, beginning in 2002, Sprint required Plaintiffs to certify every quarter that they had no intention to sue EY. (*Id.* ¶ 60.) In December 2002, Plaintiffs presented a solution to the conflict of interest problem to the Sprint Board, recommending that Sprint cease using EY as its auditor in order to resolve the potential conflict of interest between EY and Plaintiffs. (*Id.* ¶ 61.) And though EY knew that it was under criminal investigation for these actions and advice, it also met with the Sprint Board and told the Board that its advice to Plaintiffs was sound and its actions were proper. (*Id.*)

In the end, the Sprint Board agreed with Plaintiffs that the potential conflict of interest was too great, but concluded that firing EY would result in negative publicity. (*Id.* ¶ 63.) As a result, the Sprint Board asked for Plaintiffs' resignations instead. (*Id.* ¶ 64.) LeMay left Sprint in April 2003. (*Id.* ¶ 65.) Esrey left Sprint in May 2003. (*Id.*)

The gravamen of Plaintiffs' claim is that the IRS and EY hid information from Plaintiffs, preventing them from adequately defending themselves to the Sprint Board, which led to their forced resignations from Sprint in 2003. (Dkt. No. 1 ¶¶ 5-7, 58-65.) Plaintiffs did not know about the IRS criminal investigation of EY until May 25, 2004, when the investigation was publicly disclosed. (*Id.* ¶¶ 49-50.) But while EY was under criminal investigation by the IRS and SDNY for promoting fraudulent tax shelters, it was also representing Plaintiffs before the IRS, creating a conflict of interest and breaching its fiduciary duty to Plaintiffs. (*Id.* ¶¶ 46-48.) Essentially, Plaintiffs' claim is that the IRS knowingly participated in EY's breach of its fiduciary duty in violation of the laws of New York (*id.* ¶ 73), through its "active concealment of the criminal investigations," such that "Plaintiffs were unable to tell Sprint that EY's tax shelter

promotion activities were being criminally investigated" (*id.* ¶ 7).  Esrey and LeMay seek $42,550,000 and $116,800,000, respectively.[2]  (*Id.* at 12.)

 Plaintiffs asserted administrative claims against the IRS, contending, among other thing, that alleged "concealment by the IRS of the criminal investigation [of EY] and the truth regarding the promoter audit of EY prevented Mr. Esrey from defending himself before the Sprint Board of Directors, and ultimately led to the Board choosing to retain EY, it's [sic] certified public accounting firm, and forcing Mr. Esrey to resign as Chief Executive Officer of Sprint in 2003."  (Dkt. No. 20-1.)  The IRS denied Plaintiffs' administrative claims on October 22, 2015.  (*See* Dkt. No. 20-2; Dkt. No. 20-4.)

## II. Discussion

 Although Defendants move to dismiss for failure to state a claim pursuant to both Rule 12(b)(1) and Rule 12(b)(6), a court presented with motions to dismiss under Rules 12(b)(1) and 12(b)(6) must resolve the former first.  *Al Naham v. U.S. Dep't of State*, No. 14 Civ. 9974, 2015 WL 3457448, at *2 n.6 (S.D.N.Y. June 1, 2015) (citing *McKevitt v. Mueller*, 689 F. Supp. 2d 661, 664 (S.D.N.Y. 2010)).

 "Generally, a claim may be properly dismissed for lack of subject matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it."  *Kingsley v. BMW of N. Am. LLC*, No. 12 Civ. 234, 2012 WL 1605054, at *2 (S.D.N.Y. May 8, 2012) (citing Fed. R. Civ. P. 12(b)(1)); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  In considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court must accept as true all the material factual allegations contained in the complaint, but a

---

[2]  In September 2011, Plaintiffs initiated an arbitration action against EY, which led to an interim award in Plaintiffs' favor on November 11, 2013, and a final award on February 17, 2014.  (*Id.* ¶ 57.)

court is "not to draw inferences from the complaint favorable to plaintiffs." *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). "A district court properly dismisses an action under Rule 12(b)(1) if the court 'lacks the statutory or constitutional power to adjudicate it.'" *Garcia v. Lasalle Bank NA.*, No. 16 Civ. 3485, 2017 WL 253070, at *3 (S.D.N.Y. Jan. 19, 2017) (quoting *Cortlandt Street Recovery Corp. v. Hallas Telecommns. S.A.R.L.*, 790 F.3d 411, 416-17 (2d. Cir. 2015)).

The scope of the Court's jurisdiction over suits against the Government or its agencies is defined by "the terms of [the United States'] consent to be sued in any court." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (alteration in original and internal quotation mark omitted) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Id.* The Government argues that the Court lacks subject matter jurisdiction over the present action because Plaintiffs' claim does not fall within the FTCA's limited waiver of sovereign immunity.

"The FTCA waives sovereign immunity—and thus authorizes claims for damages against the United States—where federal employees commit torts while acting within the scope of their employment." *Asmah v. US Consulate Accra Ghana*, No. 15 Civ. 3742, 2016 WL 2993203, at *4 (S.D.N.Y. May 23, 2016) (citing 28 U.S.C. § 1346(b)(1)); *see also Kosak v. United States*, 465 U.S. 848, 851-52 (1984). But the FTCA contains a number of exceptions to the waiver, two of which the Government argues are relevant here: the exception for claims arising out of misrepresentation or deceit, *see* 28 U.S.C. § 2680(h); and the exception for claims arising in respect of the assessment of collection of taxes, *see id.* § 2680(c).

The FTCA's waiver of sovereign immunity does not extend to "claim[s] arising out of . . . misrepresentation" or "deceit." 28 U.S.C. § 2680(h). "[Section] 2680(h) applies to claims arising out of negligent, as well as intentional, misrepresentation." *Block v. Neal*, 460 U.S. 289,

295 (1983). And, as is relevant here, it applies to cases alleging concealment, which "fall within

the 'misrepresentation' or 'deceit' exceptions to the FTCA." *Lipkin v. U.S. S.E.C.*, 468 F. Supp.

2d 614, 624 (S.D.N.Y. 2006); *see also Regnante v. Sec. & Exch. Officials*, 134 F. Supp. 3d 749,

770 (S.D.N.Y. 2015) ("[A]llegations of . . . concealment . . . are barred by the doctrine of

sovereign immunity."). "In determining the applicability of the § 2680(h) exception, a court

must look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance

of the claim which he asserts." *Lambertson v. United States*, 528 F.2d 441, 443 (2d Cir. 1976).

Here, the Government argues that at "the heart of the complaint" is a "claim of improper

concealment of material facts." (Dkt. No. 19 at 11.) And while the claim is styled as "aiding

and abetting a breach of fiduciary duty," it is based on allegations that the IRS did so by helping

EY "hide information" or "conceal" material facts, which led to Plaintiffs' resignation from

Sprint. (Compl. ¶¶ 6-7, 36, 42.) The Court agrees. The claims in the present case are analogous

to those in *Regnante*, where the plaintiff alleged that the Securities and Exchange Commission's

"failure to disclose the actual amount of [a relevant] Sanction misrepresented material facts,

concealed material facts, and was deceitful." 134 F. Supp. 3d at 769. The court found that those

claims against the Government that are "based on allegations of misrepresentation, concealment,

deceit, and fraud," are "barred by the doctrine of sovereign immunity" as within the § 2680(h)

exception to the FTCA. 134 F. Supp. 3d at 770. *See also Thompson v. Peace Corps*, 159 F.

Supp. 3d 56, 62 n.3 (D.D.C. 2016) (finding that defendant's alleged failure to "disclose all

relevant information regarding the anti-malarial drug, mefloquine," even where plaintiff

"'detrimentally relied on these omissions,'" falls within § 2680(h)'s misrepresentation

exception).

Plaintiffs attempt to distinguish this case by framing the Complaint as arising from the

Government's alleged knowing participation in EY's breach of fiduciary duties and not based on

any misrepresentation.  (Dkt. No. 23 at 9.)  But "[a] plaintiff may not by artful pleading avoid the statutory exceptions to the FTCA."  *Dorking Genetics v. United States*, 76 F.3d 1261, 1265 (2d Cir. 1996).  Upon inspection, Plaintiffs' claim that the Government participated in EY's breach of fiduciary duty collapses into a claim that the IRS's alleged *concealment* prevented Plaintiffs from learning about and then utilizing information that may (or may not) have changed the outcome of the Sprint Board meetings that led to their forced resignations.

Plaintiffs point to two non-concealment acts to form the basis for the claim of aiding and abetting a breach of fiduciary duty.  First, Plaintiffs allege that the IRS initially insisted on using the word "penalty" in a press release announcing the settlement of the Promoter Audit.  (*Id.* ¶¶ 33-34.)  Fearing that this would be "discovered by clients," in June 2003, EY offered to "sweeten the deal" if the IRS would remove the term "penalty" from the press release.  (*Id.* ¶¶ 34-35.)  EY paid a $15 million penalty, where $1.4 million was paid in exchange for the promise not to call the settlement a "penalty."  (*Id.* ¶ 36.)  However, it is logically impossible for this act, which occurred in June 2003, to have harmed Plaintiffs' ability to defend themselves to the Board months earlier.  (*See id.* ¶ 65 ("LeMay and Esrey left Sprint in April and May 2003, respectively.").)  Second, Plaintiffs argue that the IRS failed to follow its own procedures to resolve the conflict of interest between EY and Plaintiffs.  (*See* Dkt. No. 23 at 17-20.)  But internal agency guidance documents confer no rights on taxpayers.  *See, e.g.*, *Johnson Home Care Servs. v. United States*, No. 04 Civ. 0129, 2005 WL 2210661, at *7 (E.D.N.Y. Sept. 13, 2005) ("'[T]he Internal Revenue Manual confers no rights on taxpayers.'" (quoting *Olsen v. United States*, 326 F. Supp. 2d 184, 188 n.2 (D. Mass. 2004), *aff'd*, 414 F.3d 144 (1st Cir. 2005))).

Because Plaintiffs' claim rests on allegations of concealment, it falls squarely within the § 2680(h) exception to the FTCA.  *See Regnante*, 134 F. Supp. 3d at 770.  And because the Court

concludes that the Government prevails under § 2680(h), it does not undertake an analysis

pursuant to § 2680(c).  Nor is it necessary to address the parties' argument regarding timeliness

of the claims where the Court determines it lacks subject matter jurisdiction.  *See Leskinen v.*

*Halsey*, No. 12 Civ. 0623, 2013 WL 801128, at *5 (E.D.N.Y. Mar. 5, 2013) ("As this Court lacks

subject matter jurisdiction, it does not address defendants' other arguments in support of

dismissal.")

     Because the Court grants the Government's motion to dismiss for lack of subject matter

jurisdiction, it is unnecessary to address its motion to dismiss for failure to state a claim.

**III.   Conclusion**

     For the foregoing reasons, the Government's motion to dismiss the Complaint pursuant to

Rule 12(b)(1) is GRANTED.

     The Clerk of Court is directed to close the motion at Docket Number 18 and close this

case.

SO ORDERED.

Dated:  March 23, 2017
     New York, New York

                                      J. PAUL OETKEN
                               United States District Judge